## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOHN DOE, | ) |
|     *Plaintiff*, | ) Civil Action No: |
| v. | ) |
| | ) Judge |
| William Lee, Governor of the State of Tennessee, in his official capacity; | ) |
| | ) Magistrate Judge |
| And, | ) |
| David Rausch, Director of the Tennessee Bureau of Investigation, in his official capacity; | ) |
|     *Defendants*. | ) |

## COMPLAINT

1. Plaintiff John Doe[1] brings this 42 U.S.C. § 1983 action alleging that Defendants have violated, and continue to violate, Plaintiff's Constitutional right against *ex post facto* punishment through retroactive imposition on him of Tennessee's sex offender restrictions and monitoring requirements. Plaintiff seeks declaratory and injunctive relief against the Defendants.

## PARTIES

2. Plaintiff John Doe is an adult resident of Davidson County, Tennessee.

3. Defendant William Lee is the Governor of the State of Tennessee.

---

[1] Plaintiff will be filing a motion to proceed under pseudonym and for protective order shortly after filing this complaint.

1

4. Defendant David Rausch is the Director of the Tennessee Bureau of Investigation, a state agency with a primary enforcement role in Tennessee's sex offender registration scheme.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are state officials whose offices are located in this district.

## FACTUAL BACKGROUND

### A. Plaintiff's Background

6. Plaintiff is a sixty-eight-year-old man.

7. Plaintiff is required under Tennessee law to be registered on Tennessee's Sex Offender Registry (T.C.A. § 40-39-201 et seq.) due solely to a single criminal case involving two convictions for "Attempt to Commit Aggravated Sexual Battery" (T.C.A. § 39-13-504) involving offenses that occurred in 1987 and 1988.

8. Solely due to Plaintiff's 1980's offenses, Tennessee law declares him "Violent Against Children" in perpetuity, and subjects him to lifetime[2] registration on the sex offender registry and a host of restrictions, obligations, and punishments.

9. All of Tennessee's sex offender registration, monitoring, and enforcement laws were passed after Plaintiff committed his qualifying offense.

### B. Tennessee's Sex Offender Registration and Monitoring Regime

10. In 1994, Tennessee passed its first ever sex offender registry law. However, this law required only that offenders register in a private law enforcement database.

---

[2] Because one of the victims of Plaintiff's cases was 11 years old at the time of the offense, Plaintiff is ineligible for removal from SORA under Tennessee's state law provisions. T.C.A. § 40-39-207(g)(2)(C).

11. Tennessee continued expanding the registry laws through the nineties, increasing reporting requirements and, eventually, making sex offender registrations public for those who had committed their offenses after July 1, 1997.

12. Tennessee continued periodically passing laws expanding its sex offender registration and monitoring regime, until in 2004 Tennessee passed sweeping new restrictions on convicted sex offenders hereinafter referred to as "SORA."

13. SORA imposed stringent registration and reporting requirements on statutorily defined "sexual offenders," "violent sexual offenders," and "offenders against children," and severely limited where sex offenders could live, work, and go.

14. SORA applied retroactively to past offenders, imposing its labels, restrictions, obligations, and punishments even where an offender's only qualifying offenses had occurred prior to SORA's enactment.

15. In the years since 2004, Tennessee has periodically enacted amendments to SORA, almost all of which have made it even more draconian, intrusive, and punitive.

16. Under present law,[3] Tennessee's SORA regime requires the following affirmative obligations from Plaintiff, on pain of criminal prosecution:

    a. Quarterly registration with local law enforcement;

    b. Payment of annual registration and monitoring fees;

    c. Re-registration within forty-eight hours if Plaintiff relocates to a new municipality or county, even on a temporary basis for work or school;

    d. When in public, <u>always</u> carry his state-issued identification with him, which must have a sex offender designation on it.

---

[3] T.C.A. § 40-39-201 *et seq*.

17. Tennessee's SORA regime includes a "Tennessee Sex Offender Registry" website maintained by the Tennessee Bureau of Investigation ("TBI"), which makes the following information about Plaintiff public:

    a. Name

    b. Classification of "VIOLENT AGAINST CHILDREN"

    c. Status of "ACTIVE"

    d. Date of birth

    e. Full criminal history

    f. Residential address

    g. Race and gender

    h. Last date of information verification

    i. Most recent photograph submitted to TBI

    j. Driver's license and/or state identification number

    k. Physical description including height, weight, eye color, hair color, tattoos, scars, and marks

    l. Criminal history, including the date of all arrests and convictions, probation and/or parole status, and the existence of any outstanding warrants

    m. Address of Plaintiff's employer(s)

    n. License plate number and description of Plaintiff's vehicle(s)

18. SORA prohibits Plaintiff from the following, on pain of felony criminal prosecution:

    a. Working or residing within 1000' of a school, day care center, other child care facility, public park, playground, recreation center, or public athletic field;

b. Residing within 1000' feet of the victims from Plaintiff's criminal case, or any of the victims' family members; coming within 100' of the victims; or, contacting the victims without their consent.

   c. Any of the following, unless picking up or dropping off his own child at school after giving written notice of his sex offender status to the school's principal, or attending a conference with officials at a school, day care, child care, recreation center, or playground with written permission from the administrator:

      i. Entering the premises of any school, day care center, other childcare facility, public park, playground, recreation center, or public athletic field when there is reason to believe that children may be present;

      ii. "Stand[ing], sit[ting] idly, or remain[ing]" within 1000' feet of any school, day care center, other child care facility, public park, playground, recreation center, or public athletic field "while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there;"

      iii. Being within any vehicle owned, leased, or contracted by a school, day care, childcare, or recreation center when children under 18 years of age are present;

   d. Residing with two or more other convicted sex offenders;

   e. Being alone with a minor in a "private area."

   f. Residing with, or having an overnight visit in, a place in which a minor is present.

19. SORA authorizes the following additional optional punishments against Plaintiff:

   a. Public libraries may ban Plaintiff from their premises;

    b. Municipalities may implement a "community notification system" to alert members of the public should Plaintiff indicate his intention to move there;

    c. A municipality where Plaintiff resides may charge Plaintiff up to $50 per year toward the cost of its community notification system.

### C. Specific Impacts of SORA on Plaintiff

20. SORA's impositions, detailed at ¶¶ 16 – 19, have substantially interfered with Plaintiff's career, family, reputation, and overall enjoyment of life and will continue to substantially interfere so long as Plaintiff is subject to them.

21. Under current law, Plaintiff will continue to be subjected to these SORA impositions for the rest of his life.

22. SORA requires Plaintiff to report quarterly, and each time he reports he must sign his acknowledgment of the SORA rules. The rules are complex, and each time he reports it seems like there are new rules in place. Consequently, Plaintiff routinely feels anxiety that he could be arrested because of a rule change that he is not even aware of.

23. Plaintiff is married, and his registry status, restrictions, and obligations heavily impact his wife. Plaintiff is prohibited from decorating the outside of the house for holidays, a prohibition that weighs heavily on his wife. Plaintiff's wife would love to host more social gatherings at their home, but this is difficult because of Plaintiff's SORA restrictions and stigma. Consequently, rather than enjoy the joys of hosting Plaintiff's wife must constantly invent excuses for why friends cannot come to their home. Plaintiff's wife also has to keep up with the complex and ever-changing SORA rules, which is stressful for her and for Plaintiff's marriage.

24. Plaintiff is a father to four adult daughters and an adult son, who are all aware of Plaintiff's SORA status. All but one of Plaintiff's children reside in Tennessee, but it is difficult to get the family together regardless because of the SORA restrictions on Plaintiff being with his minor grandchildren. One of Plaintiff's daughters just graduated a PhD program in education, but Plaintiff was unable to attend her graduation due to SORA. Plaintiff's inability to attend the ceremony was hard on both of them.

25. Plaintiff previously attempted to request his release from the registry by writing a letter to the TBI. Plaintiff's children were with him when he wrote the letter, and the whole family pinned its hopes for a better future on that letter. However, the TBI responded by informing Plaintiff that he would have to remain on the registry for the rest of his life. This was crushing for Plaintiff, his wife, and the whole family.

26. Plaintiff has numerous grandchildren, most of whom are minors living in Tennessee. Several of them are in sports, and Plaintiff would love to be able to attend their games and school events. Plaintiff loves football, and desperately wishes he could participate in his grandson's football teams and attend their games. However, due to SORA he cannot. Plaintiff is able to see his grandchildren with their parents, but cannot be the kind of grandfather he would want to be for them because he must always be chaperoned, cannot spend the night in the same place as them, and cannot attend their public events. Worse, because of SORA Plaintiff is afraid to even hug his own grandchildren out of fear that someone who knows about his SORA status might suspect him of doing something inappropriate. Consequently, he generally gives them "fist bumps" and "high 5's" rather than hugs to avoid this issue. However, Plaintiff worries that eventually his grandchildren will ask them why he does not hug them like other grandparents hug

grandchildren. One of Plaintiff's grandchildren in particular, "W.", wants to do everything with Plaintiff. But, due to SORA Plaintiff has to maintain boundaries with W. This is painful for W, who interprets this as Plaintiff not wanting to be with him. This is the furthest thing from the truth, and W's perception is very painful for Plaintiff. Plaintiff also has a 15-year-old grandson in Michigan. Plaintiff wishes he could visit and see his teenaged grandson play sports, but SORA makes this extremely difficult. These restrictions impact Plaintiff's relationship with that grandson, harming them both. Plaintiff is constantly having to make up excuses for missing his grandchildren's events, which is also painful.

27. SORA has had an extreme impact on Plaintiff's career and finances. Plaintiff has made numerous attempts over the course of his life to obtain and maintain employment, but these efforts have been consistently undermined by SORA. Plaintiff has had numerous jobs that he has been rejected from due to his SORA status, and other jobs that he was able to initially obtain was then let go from after the employer discovered his SORA status. In Plaintiff's experience, no one wants to hire a registered sex offender and give them a second chance because of the stigma and the image it would give the business if someone found out. Even when interviews have turned out really well, once the background comes back Plaintiff has been ignored, "ghosted," or dismissed. SORA also limits Plaintiff's ability to relocate for work, which again limits his job options. Ultimately, Plaintiff was forced to seek disability, which he did qualify for and does receive payments for. However, Plaintiff would have preferred to work, and could have earned a better living if SORA had not undermined his efforts to build a career.

28. Because of the impact SORA has had on Plaintiff's career and finances, Plaintiff has had to depend financially on his wife's income rather than providing for his family in the way that he would want as a husband and father. This has been acutely painful at times, for instance at one point Plaintiff's adult daughter was injured in a car accident and had to move home while she recovered from her injuries. Plaintiff was unable to help his daughter with her medical and other bills in the way that he would want, and felt like less of a father as a result.

29. Because of SORA, Plaintiff feels unable to open his home to church members and family members who may need a place to stay or even to just eat dinner.

30. Plaintiff has out-of-state family in Pennsylvania and Michigan. Because of SORA, Plaintiff feels unable to travel to visit them.

31. SORA requires Plaintiff to provide his nearest relatives' information for the TBI, which is intrusive for Plaintiff and for his relatives.

32. Plaintiff's credit report has "sex offender" stamped on it, which is stigmatizing for Plaintiff and makes it more difficult and expensive for him to obtain credit.

33. Plaintiff and his wife are restricted due to SORA from decorating the outside of their house for holidays oriented toward children, such as Halloween.

34. Plaintiff and his wife enjoy cruises, and would like to travel internationally. However, due to SORA and the "International Megan's Law,"[4] if Plaintiff obtains a passport it must mark him as a sex offender. Plaintiff has been subjected to very invasive searches by U.S. customs upon his return from cruises.

---

[4] 22 U.S.C. §212b (including in the definition of "covered sex offender" that one be presently required to register in any jurisdiction).

9

Case 3:23-cv-00978    Document 1    Filed 09/12/23    Page 9 of 13 PageID #: 9

35. Plaintiff has to have an "88" code on his driver's license due to SORA. This gives Plaintiff constant anxiety about what would happen if he were pulled over on even a routine traffic stop.

36. Plaintiff resides in Davidson County, Tennessee, an urban community with a large number of schools, daycares, parks, and other prohibited zones. Because of SORA, Plaintiff must be very careful about where he goes in his community.

37. Plaintiff is on disability, with a limited fixed income. The mandatory SORA registration fees, which Plaintiff would be subject to felony prosecution for failing to pay, are a financial hardship for Plaintiff and his wife.

38. SORA seriously impacts Plaintiff's recreational life. Plaintiff would love to be able to just go to the park and ride bicycles with his wife, but he cannot. Plaintiff would love to just go to the beach with his family, but he cannot due to SORA.

39. SORA also impacts Plaintiff's ability to engage with his church and community. Plaintiff would love to mentor young men, especially those in his community that do not have involved fathers and are in the streets. Plaintiff is unable to do this with anyone younger than 18 because of SORA, and he worries that even those he can volunteer with will look him up on the SORA website and fear that he is dangerous. At church, there are single mothers who know that Plaintiff is a strong father figure and want Plaintiff to mentor their younger sons who lack fathers. However, due to SORA Plaintiff cannot help them. Plaintiff was promoted in the church to help grow the men's ministry and has done such a great job they have talked and talked about doing a young men's ministry. Due to SORA, Plaintiff has had to refrain from volunteering in this way. It is difficult for Plaintiff to

explain his reluctance to his congregation, because although Plaintiff's minister knows about his SORA status there are many in the congregation who do not.

40. Plaintiff has a high school-age niece who is due to go to college on a basketball scholarship and has never been able to attend her games.

41. There are now smart phone "apps" that show were registered sex offenders live, such as "Pocket 360." Because of these apps, people in Plaintiff's neighborhood can get automated notifications about Plaintiff's SORA status just by being present.

42. In addition to these ongoing impacts, Plaintiff has dealt with a host of other indignities and restrictions over the years due to SORA. Plaintiff missed many of the critical events in his children's lives when they were growing up, such as athletic games and graduations. Plaintiff has also missed other family events, and has remained in the same housing for years because of SORA's severe housing restrictions. Although nothing can be done about these past events now, Plaintiff hopes to salvage his remaining years for himself and his family.

# CLAIMS FOR RELIEF

### COUNT I: EX POST FACTO VIOLATION IN VIOLATION OF ARTICLE I, § 10 OF THE U.S. CONSTITUTION
### (42 U.S.C § 1983)

### (ALL DEFENDANTS)

43. Plaintiff hereby reincorporates paragraphs 1 – 42 by reference.

44. As applied to Plaintiff, Tennessee's SORA regime constitutes "punishment" within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution.

45. Defendants Lee and Rausch are proper official capacity defendants because they both have roles in enforcing Tennessee's SORA regime.

46. Plaintiff is entitled to declaratory and injunctive relief prohibiting Defendants from continuing to enforce Tennessee's SORA regime on him in violation of his constitutional right against *ex post facto* punishment.

# REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.

2. That the Court grant a preliminary injunction enjoining Defendants from enforcing Tennessee's SORA regime against Plaintiff solely on the basis of his 1988 convictions.

3. That judgment for Plaintiff enter against the Defendants on each count.

4. That the judgment declare that it is unconstitutional for Tennessee to retroactively impose its SORA regime on Plaintiff solely on the basis of his 1988 convictions.

5. That the judgment permanently enjoin Defendants from enforcing Tennessee's SORA restrictions against Plaintiff solely on the basis of his 1988 convictions.

6. That Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).

7. That the court costs in this matter be taxed to Defendants.

8. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
2901 Dobbs Ave
Nashville, TN 37211
T: (615) 429-4717 / F: (615) 229-6387
E: Kyle@relentlesslaw.com